IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WAYNE SIMPSON                        )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        Civil Action No. 14-1211-SLR-SRF
                                     )
PRINCE TELECOM, LLC,                 )
                                     )
            Defendant.               )

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Presently before the court in this employment action alleging violations of the Fair Labor

Standards Act ("FLSA") and racial discrimination, is defendant Prince Telecom LLC

("Prince") motion for summary judgment. (D.I. 64) For the following reasons, I recommend that

the court grant Prince's motion for summary judgment.

## II.   BACKGROUND

### A. Procedural History

Plaintiff Wayne Simpson ("Plaintiff") filed this action against Prince on September 9,

2014, asserting claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

("Title VII"). (D.I. 1) Plaintiff alleges that Prince violated the FLSA by misclassifying him as

exempt from the wage and overtime requirements of the FLSA. (*Id.* at ¶¶ 41, 45) Accordingly,

Plaintiff asserts that Prince failed to pay wages for all hours worked, and overtime pay for all

hours worked in excess of forty hours per week. (*Id.* at ¶¶ 40–47) Plaintiff also alleges that

Prince unlawfully discriminated against him on the basis of his race. (*Id.* at ¶¶ 48–50)

Prince filed the pending motion for summary judgment on May 16, 2016.  (D.I. 64) The

briefing schedule was extended to allow for additional limited discovery.  (D.I. 71) Briefing was

completed on August 9, 2016. (D.I. 74)

## B. Facts

Prince is a national telecommunications customer-service fulfillment company.  (D.I. 65

at 2) Prince provides services for multi-service operators ("MSO") such as Comcast,

Cablevision, Charter, Time Warner, and WOW.  (D.I. 72 at 2) Prince works exclusively with

Comcast in the New Castle County, Delaware region.  (*Id.*) Prince hired Plaintiff as a technician

for the New Castle facility in August 2006.  (*Id.*; D.I. 65 at 2–3)

Plaintiff was paid hourly as a technician.  (D.I. 72 at 2) His duties included installing

cable, cable boxes, phone, and internet.  (*Id.*) Prince promoted Plaintiff to Supervisor in

December 2007.  (D.I. 65 at 2) As a supervisor, Plaintiff began to receive a salary instead of the

hourly pay he received as a technician.  (D.I. 72 at 2) Prince promoted Plaintiff to Project

Manager on June 6, 2010, with an associated $56,000 annual salary.  (D.I. 65 at 2–3)  He held

the position of Project Manager through the date of his termination on October 28, 2013. (D.I. 68

at A755–76) Plaintiff's FLSA claims relate only to the period for which he claims that he was

mischaracterized as exempt while holding the title of Project Manager.  (D.I. 1 at ¶¶ 14–24)

### 1.  Plaintiff's duties as Project Manager

Prince originally posted a vacancy announcement for the Project Manager position.  (D.I.

66 at A25) The job responsibilities listed on the announcement were as follows:

- Direct liaison between Prince Telecom and our MSO
- Maintain positive MSO relationships
- Maintain profitable daily MSO workload within all MSO time frame requirements and installation specifications.
- Screen applicants, interview, hire or retain, train, supervise, discipline, evaluate field technicians, office support personnel, and supervisors.

- Ensure and maintain all billing and payroll integrity, as well as corporate paperwork requirements.
- Ensure and maintain all MSO and company quality control and safety requirements.
- Maintain and control all company assets and MSO inventory.
- Analyze operations, identify performance issues and recommend and implement corrective action.
- Hold regular staff meetings for timely communications of MSO and corporate directives and or changes.
- Complete Weekly Report which summarizes all operational concerns i.e. converter reconciliation, quality control, work load, system and personnel needs, etc.

(*Id.*) The announcement also listed the position as "Exempt" under the FLSA. (*Id.*) Prince's

Human Resources Director, Anitha N. Verghese, clarified through deposition testimony that the

position fell under the administrative exemption, which covers employees with management

duties. (D.I. 72 at 83)

As Project Manager, Plaintiff had anywhere from fifteen to fifty technicians working

under him. (D.I. 68 at A770) He went to unemployment hearings on Prince's behalf, issued

technician discipline and performance evaluations, signed off on termination forms, issued

company policy notices, and signed technicians' weekly time sheets. (D.I. 66 at A27–63; D.I. 67

at A336–40; D.I. 68 at A769–71, A788–89) He also dispatched technicians to work sites,

performed installations, viewed DriveCam[1] history videos, and placed orders for equipment.

(D.I. 1 at ¶ 15)

Stephen Carpenter was a supervisor who reported to Plaintiff when he held the Project

Manager title. (D.I. 68 at A794) Mr. Carpenter sat in on conference calls with management,

where Plaintiff discussed "trouble technicians" and financials. (*Id.* at A802–03) Mr. Carpenter

---

[1] All Prince vehicles are equipped with a camera known as a "DriveCam," which is used to promote safe driving. (D.I. 67 at A545–50) According to company policy, Project Managers were required to review the technicians' DriveCam footage for safety violations. (*Id.*)

and Plaintiff also participated in weekly technician meetings, where Plaintiff discussed

DriveCam videos, service calls, and safety. (*Id.* at A803) Mr. Carpenter testified that Plaintiff

was involved in technician hiring, discipline, and firing. (*Id.* at A794–95) Mr. Carpenter referred

technician discipline to Plaintiff. (*Id.* at A801) Plaintiff regularly sat down with technicians to

discuss lateness, absences, and poor DriveCam performance. (*Id.* at A801–02)

Plaintiff asserts that his position was mischaracterized as exempt, as he was actually

doing the job of a technician. Because of the workload, Plaintiff testified that he spent ninety

percent of his time in the field like a technician, performing installations, changing services, and

responding to service calls. (*Id.* at A761–62) He claims he spent one percent of his time sending

work out for technicians. (*Id.* at A758) He spent less than five percent of his time viewing

DriveCam history videos. (*Id.* at A759) Plaintiff also testified that he did not feel he had

discretion in hiring or discipline, as these decisions were made by his superiors. (D.I. 73 at 41)

Plaintiff testified that, as Project Manager, he worked every day Monday through

Saturday from 6:00AM until midnight. (*Id.* at 43–46) He also worked half days on Sunday. (*Id.*)

### 2.   Events underlying Plaintiff's alleged discrimination and termination

In 2012, Plaintiff complained to Ms. Verghese that his supervisor, Bruce Schaefer, was

not treating African American employees fairly. (*Id.* at 100) Plaintiff testified that Mr. Schaefer

tore up disciplinary documents for white technicians, but allowed discipline for African

American technicians for the same conduct. (*Id.* at 53–54) Plaintiff testified that Ms. Verghese

dismissed his complaints. (*Id.* at 54–55)

Mr. Schaefer testified that in April and May of 2012, Plaintiff failed to properly enforce

the DriveCam safety policy. (D.I. 68 at A705) Specifically, Plaintiff failed to discipline seven

drivers. (*Id.*) On September 28, 2012, Prince issued Plaintiff a Performance Improvement Plan

outlining concerns regarding Plaintiff's failure to meet expectations. (*Id.* at A711) The warning

outlined the following transgressions, which occurred on September 18, 2012:

- Work Orders for Restart/Reconnect at the pole were being marked as completed and submitted to Comcast as completed even though they were not.
- These work orders were placed under a Supervisors [sic] Tech Number. The Supervisor coded the job and signed off as completed when that was not the case.
- The incomplete work orders were submitted to [redacted] with fictitious meter readings documented by your supervisors.
- These work orders were then handed to the Technicians within a few days to be completed, with the techs paid hourly codes including training wages.
- Trainees were used to complete this work and paid training wages costing the company more money than the normal payout for the job.

(*Id.*) The warning also outlined areas requiring immediate improvement. (*Id.*) As a result,

Plaintiff received a one week suspension from the company. (*Id.*)

On July 29, 2013, Prince asked Plaintiff to consider stepping down from Project Manager

to Project Supervisor based on several incidents, including failure to check and approve salaried

timecards, a complaint that Plaintiff was late and uninterested in a technician job interview, and

failure to respond to Dispatch regarding a technician who needed equipment. (*Id.* at A710)

Plaintiff was permitted to keep his job based on the assurance that he would improve his

performance. (*Id.* at A734)

On August 23, 2013, Plaintiff received an additional warning for failing to discipline a

technician who had multiple DriveCam violations. (*Id.* at A706, A713)

In September 2013, Ben Herson, a Caucasian male, became Plaintiff's direct supervisor.

(D.I. 73 at 100) Plaintiff testified that during a phone conversation with Mr. Herson in early

September, "Mr. Herson made insensitive and stereotypical remarks relating to African

Americans." (*Id.*) Mr. Herson stated that "everywhere black people have the same problem."

(*Id.*)

On September 16, 2013, Plaintiff was questioned as to why he had not addressed DriveCam violations for technician, Shamoon Baba. (D.I. 68 at A715) Plaintiff responded that he would work on termination papers that day. (*Id.*) On September 18, 2013, Prince authorized Mr. Baba's termination. (*Id.* at A721–22) On September 19, 2013, Plaintiff told Mr. Baba to stay home while Prince reviewed its decision, despite the fact that the termination had already been approved. (*Id.*) On September 24, 2013, Mr. Baba was still unclear as to whether he would be terminated. (*Id.*)

On September 23, 2013, Plaintiff was asked to take action regarding another technician, Nelson Velazquez, who had DriveCam infractions. (*Id.* at A725) Plaintiff explained that he went on vacation on September 24, 2013, leaving Mr. Herson to terminate Mr. Baba and Mr. Velasquez. (*Id.* at A739) However, Mr. Herson did not terminate those employees while Plaintiff was on vacation. (*Id.*) Plaintiff prepared Mr. Velasquez's termination papers on October 7, 2013. (*Id.* at A730–31) Prince approved the termination that day. (*Id.*) On October 12, 2013, Plaintiff was questioned as to why he had not yet terminated Mr. Velazquez. (*Id.*)

In late September, Plaintiff disagreed with Mr. Herson's decision to fire an African American technician, LeiAndre Neal, based on the fact that other non-African American employees with similar violations were not fired. (D.I. 73 at 100–01) Plaintiff testified that Mr. Herson responded, "If you don't fire him, I will fire you. You black people think this company owes you something. This company owes you nothing." (*Id.* at 101)

On October 1, 2013, before Plaintiff filed the ethics complaint on Mr. Herson, Ms. Verghese requested a severance agreement to present to Plaintiff at an October 4, 2013 termination meeting. (D.I. 68 at A734–37) However, Mr. Herson requested cancellation of the termination meeting. (*Id.* at A735) Prince represents that Mr. Herson wanted more time to work

with Plaintiff to improve his performance.  (D.I. 65 at 7) Plaintiff reported his conversation with

Mr. Herson from early September to an ethics hotline on October 7, 2013.[2]  (*Id.*)

On October 28, 2013 Prince terminated Plaintiff, citing failure to timely discipline Mr.

Baba, Mr. Velasquez, and Mr. Neal.  (D.I. 68 at A746) The termination notice also cited ongoing

communication and management supervision issues.  (*Id.*) A day later, Plaintiff attempted to

report Mr. Herson's second race-related comment to the ethics hotline.  (D.I. 73 at 103) While

the investigation was pending, Plaintiff was advised by counsel to discontinue communications

with the hotline.  (*Id.*) Accordingly, the hotline closed Plaintiff's claim.  (*Id.*)

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact.  *See Celotex*, 477 U.S. at 321.  The burden then shifts to the non-movant to

demonstrate the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458,

460–61 (3d Cir. 1989).  The non-movant must support its contention by citing to particular

---

[2] There is nothing in the record that suggests Plaintiff was aware of the termination meeting that
was scheduled for October 4, 2013, that was latter canceled at the request of Mr. Herson. (D.I. 68
at A734–35)

documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The existence of some evidence in support of the non-moving party may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 249. If the non-moving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV.    DISCUSSION

### A.    Plaintiff's FLSA Claims

Under the FLSA, "no employer shall employ any of his employees…for a workweek of longer than forty hours unless such employee receives compensation…at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Certain employees, however, are exempted from the FLSA, including those who are "employed in a bona fide executive, administrative, or professional capacity." *Id.* at § 213(a)(1).

An executive employee under the FLSA includes one who is:

(1) Compensated on a salary basis at a rate of not less than $455 per week…exclusive of board, lodging or other facilities;
(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). An administrative employee means any employee who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week...exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* at § 541.200(a). Under the combination exemption of the FLSA, "an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section." *Id.* at § 541.708.

The employer bears the burden of proving an employee satisfies any exemption. *Ballard v. Dover Wipes Co.*, C.A. No. 13-714-RGA-MPT, 2015 WL 2089089, at *3 (D. Del. May 4, 2015) (citing *Sander v. Light Action, Inc.*, 525 Fed. App'x 147, 150 (3d Cir. 2013); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).

### 1. Executive exemption

Prince argues that Plaintiff's FLSA claims fail because all four elements of the executive exemption are met. (D.I. 65 at 10) The parties do not dispute that the first element is satisfied. (*Id.* at 10 n.2; D.I. 72 at 11) However, Plaintiff argues that genuine issues of material fact exist with respect to the remaining factors because Plaintiff's primary role was to perform manual work in the field, Plaintiff did not regularly direct the work of other employees, and Plaintiff did not have true discretion to hire, fire, and make advancement decisions with respect to other employees. (D.I. 72 at 11–16)

### a.   Whether Plaintiff's primary duty was management

"The Regulations set forth a qualitative, not quantitative, test for whether an employee is

a bona fide executive." *See Soehnle v. Hess Corp.*, 399 Fed. App'x 749, 751 (3d Cir. 2010).

The regulations define "management" as follows:

> Generally, "management" includes, but is not limited to, activities such as
> interviewing, selecting, and training of employees; setting and adjusting their
> rates of pay and hours of work; directing the work of employees; maintaining
> production or sales records for use in supervision or control; appraising
> employees' productivity and efficiency for the purpose of recommending
> promotions or other changes in status; handling employee complaints and
> grievances; disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among the employees; determining
> the type of materials, supplies, machinery, equipment or tools to be used or
> merchandise to be bought, stocked and sold; controlling the flow and distribution
> of materials or merchandise and supplies; providing for the safety and security of
> the employees or the property; planning and controlling the budget; and
> monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. "[P]rimary duty"…refers to the "principal, main, major or most important"

duty performed by the employee, regardless of how much time [he] devotes to it." *Soehnle*, 399

Fed. App'x at 751 (quoting 29 C.F.R. § 541.700(a)).

> Determination of an employee's primary duty must be based on all the facts in a
> particular case, with the major emphasis on the character of the employee's job as
> a whole. Factors to consider when determining the primary duty of an employee
> include, but are not limited to, the relative importance of the exempt duties as
> compared with other types of duties; the amount of time spent performing exempt
> work; the employee's relative freedom from direct supervision; and the
> relationship between the employee's salary and the wages paid to other employees
> for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700.

In the present action, the record reflects that Plaintiff was responsible for interviewing,

training, and disciplining technicians, dispatching technicians to work sites, signing technician

time sheets, reviewing DriveCam footage to enforce Prince's vehicle safety policy, discussing

financials with management, and supervising technicians and supervisors.  (D.I. 66 at A27–63;

D.I. 67 at A336–40; D.I. 68 at A769–71, A788–A803) Accordingly, Plaintiff performed management duties.

With respect to whether management is a primary duty, in *Soehnle v. Hess Corp.*, the Third Circuit concluded that the plaintiff qualified as an exempt executive where she was the sole manager on site at her workplace, held accountable for profit and loss, responsible for the supervision of several employees, and was making 40% more than the hourly-wage employees at the site. 399 Fed. App'x at 751–52. Although the plaintiff spent a large amount of her time operating the cash register, a non-exempt activity, a qualitative assessment of her responsibilities demonstrated that her primary duty was management. *Id.*

Similarly, in the present action, although Plaintiff testified that he spent most of his time in the field, a qualitative assessment reveals that Plaintiff's primary duty was management.[3] In considering the relative importance of his exempt duties compared to his non-exempt duties, Plaintiff argues that his managerial duties were not vital because Prince operated without problems while he was out in the field for eight to ten hours a day. (D.I. 72 at 12–13) However, the record reflects that despite the time Plaintiff alleges he worked in the field, Plaintiff was still responsible for performing important managerial duties such as technician supervision and discipline, and attending management meetings regarding employee performance and business financials.

Plaintiff also argues that management was not a primary duty because he "spent upwards of 90% of his time off site performing non-exempt routine and recurrent field work." (D.I. 72 at 14) However, "primary duty" does not connote the most time-intensive of an employee's

---

[3] Plaintiff argues that this is a factual matter, and therefore, inappropriate to determine on summary judgment. (D.I. 72 at 12) However, the Third Circuit previously affirmed a grant of summary judgment on the sole issue of whether the plaintiff's primary duty was management. *See Soehnle*, 399 Fed. App'x at 751–52.

functions, but instead refers to the "principal, main, major or most important" duty performed by the employee, regardless of how much time he devotes to it. *Soehnle*, 399 F. App'x at 751. In *Soehnle*, the Third Circuit found that the exemption applied, despite the plaintiff's argument that she spent at least 85% of her work day performing non-exempt duties.[4] *Id.* In the present action, even if Plaintiff spent a majority of his time in the field, the record reflects that Plaintiff's most important duties as Project Manager were those involving management of technicians and day to day operations at Prince.

Finally, Plaintiff argues that management was not a primary duty because he was not relatively free from direct supervision. (D.I. 72 at 14) Plaintiff only acted at the direction of his supervisors. (*Id.*) However, while Plaintiff answered to higher authority figures, the evidence indicates that Plaintiff also had the authority and discretion to manage technicians and supervisors in the New Castle facility. For example, Plaintiff had his own office and administrative assistant. (D.I. 68 at A770, A797, A812) He was responsible for managing up to fifty technicians and three supervisors. (*Id.* at A770, A791–92, A794) He dispatched technicians to job sites and held weekly safety meetings with the technicians. (D.I. 1 at ¶ 15; D.I. 68 at A803, A822) Plaintiff also regularly sat down with technicians to issue discipline regarding DriveCam videos. (D.I. 68 at A801–02) Accordingly, although Plaintiff answered to his superiors, he also had relative freedom to manage daily operations in the New Castle office.

---

[4] *See also Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3d Cir. 1983) (individuals were exempt despite spending more than 56% of their time performing non-exempt work); *Itterly v. Family Dollar Stores, Inc.*, Civil Action No. 08-1266, 2014 WL 348638, at *4 (E.D. Pa. Jan. 30, 2014), *aff'd*, 606 F. App'x 643 (3d Cir. 2015) (although the plaintiff performed non-exempt work throughout the day, the plaintiff was ultimately responsible for overall management which outweighed the time spent performing non-exempt duties).

Therefore, based on a qualitative analysis, the record reflects that Plaintiff's primary duty was management.

### b.  Whether Plaintiff customarily and regularly directed the work of other employees

"The phrase 'customarily and regularly' means a frequency that must be greater than occasional but…may be less than constant.  Tasks or work performed 'customarily and regularly' include[] work normally and recurrently performed every workweek."  29 C.F.R. § 541.701.

Plaintiff argues that he did not customarily and regularly direct the work of two or more individuals because Comcast submitted work orders identifying the technician to perform the work, the location of the job, and the nature of the job.  (D.I. 72 at 15) Plaintiff's role was limited to handing the work order to the individual employee.  (*Id.*) He did not have true discretion to discipline employees, as discipline was determined by Plaintiff's supervisors and existing company guidelines.  (*Id.*) Prince responds that there are "hundreds of pages of incontrovertible proof that [Plaintiff] customarily and regularly directed the work of many more than two employees."  (D.I. 74 at 5) Specifically, the evidence shows that up to fifty technicians and three supervisors reported to Plaintiff.  (*Id.*) Additionally multiple employees testified that Plaintiff had significant input in hiring, firing, and disciplinary decisions.  (*Id.*) Plaintiff's deposition testimony is the only evidence to refute such facts.  (*Id.*)

As discussed in the preceding section, the record reflects that Plaintiff regularly supervised multiple employees.  *See* § IV(A)(1)(a).  Plaintiff issued work orders to technicians and reviewed DriveCam footage daily.  He also held weekly safety meetings with technicians and attended weekly meetings with management and supervisors.  Plaintiff's own testimony, unsupported by the record as a whole, is insufficient to establish a genuine issue of material fact.

*United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993).

Therefore, there is no material factual dispute that Plaintiff customarily and regularly directed the work of other employees.

### c. Whether Plaintiff's hiring, firing, advancement, and other employment recommendations were given particular weight

The fourth element of the executive exemption requires an employee to have authority to hire or fire other employees, or that particular weight is given to his suggestions regarding hiring, firing, promotion, advancement, or other changes of employment status. *See Ballard v. Dover Wipes Co.*, C.A. No. 13-714-RGA-MPT, 2015 WL 2089089, at *3 (D. Del. May 4, 2015).

To determine whether an employee's recommendations are given "particular weight," the court considers whether making such recommendations is part of the employee's job description or duties, whether the recommendations "are made or requested frequently, and whether they are frequently relied upon." *Id.* at *4 (quoting *In re Enterprise Rent-a-Car Wage & Hour Emp't Pracs. Litig.*, Misc. No. 09-210, 2012 WL 4356762, at *15 (W.D. Pa. Sept. 24, 2012)). The recommendations must concern employees whom the executive "customarily and regularly directs." *Id.* The executive's recommendations may still "have particular weight even if a higher level management's recommendation has more importance and even if the [executive] does not have the authority to make the ultimate decision as to the employee's change in status." *Id.* (quoting *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 558 (3d Cir. 2006)).

Plaintiff argues that his role with respect to the hiring process was "non-existent." (D.I. 72 at 15) He contends that this assertion is supported by Ms. Verghese's testimony that "no one single handedly has authority to terminate." (*Id.*) Furthermore, Plaintiff argues that his recommendations were not given particular weight because his sole involvement with

termination was to initiate a conversation about a potential termination.  (*Id.* at 16) His superiors were responsible for discussing the recommendation and making a final determination.  (*Id.*)

Prince responds that multiple employees testified that Plaintiff had significant input in hiring, firing, and other disciplinary actions. (D.I. 74 at 5) The record shows that Plaintiff enforced Prince's disciplinary policies, interviewed applicants, extended offers for employment, made termination recommendations, carried out termination decisions, and recommended employees for advancement.  (*Id.*) Moreover, Prince asserts that Plaintiff's recommendations were followed in all instances unless he failed to request or administer discipline in a timely fashion. (D.I. 65 at 13)

Prince submits over thirty pages of emails where Plaintiff requested approval to discipline technicians, and those requests were approved. (D.I. 67 at A502–34) He signed off on promotions. (D.I. 66 at A16) He documented transgressions and issued counseling documentation to supervisors under his oversight.  (*Id.* at A26) He issued warnings and suspension documentation to technicians.  (*Id.* at A34–62) Plaintiff's recommendations may still hold particular weight, even though higher level management made the ultimate decisions. *See Ballard v. Dover Wipes Co.*, C.A. No. 13-714-RGA-MPT, 2015 WL 2089089, at *4 (D. Del. May 4, 2015).  Accordingly, the record reflects that Plaintiff's hiring, firing, advancement, and other employment recommendations were given particular weight.

Because each element of the executive exemption is satisfied, there is no genuine issue of material fact in dispute as to whether Plaintiff was exempt from the wage and overtime requirements of the FLSA.  Therefore, I recommend granting Prince's summary judgment motion under the executive exemption.

### 2. Administrative exemption

Prince also argues that Plaintiff's FLSA claims fail because each element of the administrative exemption is satisfied. (D.I. 65 at 13) Plaintiff argues that genuine issues of material fact exist with respect to the administrative exemption because Plaintiff's primary duties involved manual work, unrelated to management, and Plaintiff did not exercise discretion or independent judgment in matters of significance. (D.I. 72 at 7–10)

#### a. Whether Plaintiff's primary duty was office work directly related to management

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business...." *Id.* For example, "[a]n employee who leads a team of other employees assigned to complete major projects for the employer...generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team." *Id.* at § 541.203(c).

Plaintiff argues that his primary role was manual labor, identical to that of a technician. (D.I. 72 at 7) Plaintiff contends that he worked twelve hour days performing installations seven days a week. (*Id.*) He spent 90% of his job completing work in the field. (*Id.*) Additionally, Plaintiff argues that he had "minimal to no involvement with personnel and [the] financial department and was not involved in formulating policy or making major decisions for [Prince]." (*Id.* at 8) Prince responds that Plaintiff was responsible for several facets of Prince's business including: (1) hiring, firing, training, and disciplining technicians; (2) assigning work to technicians daily; (3) ensuring technicians performed work in a timely, satisfactory, and

profitable manner; (4) participating in management meetings; (5) holding safety meetings; (6) and being responsible for profit and loss ("P&L").  (D.I. 65 at 14)

In *Smith v. Johnson and Johnson*, the Third Circuit affirmed the District Court's finding that a pharmaceutical sales representative's primary duty was office work, which was directly related to management.  593 F.3d 280, 285 (3d Cir. 2000).  While the plaintiff spent a large amount of time in the field pitching sales to physicians, her non-manual duties included "form[ing] a strategic plan designed to maximize sales in her territory." *Id.*  The court found that such non-manual work satisfied the "directly related to the management or general business operations of the employer" element of the exemption because "it involved a high level of planning and foresight, and the strategic plan that [the plaintiff] developed guided the execution of her remaining duties." *Id.* (citations omitted).  Similarly, in *Ballard v. Dover Wipes*, although the plaintiff testified that she performed manual labor for long periods of time due to staffing shortages, the court found that the administrative exemption applied because the plaintiff's resume and deposition testimony refuted her assertion.  C.A. No. 13-714-RGA-MPT, 2015 WL 2089089, at *5 (D. Del. May 4, 2015).

The record indicates that Plaintiff performed managerial duties directly related to running the New Castle facility.  *See* § IV(A)(1).  Specifically, Plaintiff led upwards of fifty technicians and three supervisors in completing daily work orders for Comcast.  *Id.*; *see also* 29 C.F.R. § 541.203(c) ("[a]n employee who leads a team of other employees assigned to complete major projects for the employer...").  Plaintiff quotes language from *Ballard* explaining that generally a "primary duty involves over 50% of the employee's work time."  (D.I. 72 at 7)  However, Plaintiff fails to quote the entirety of the statement that, "flexibility is appropriate when applying this rule." *Ballard*, 2015 WL 2089089, at * 5.  Although Plaintiff testified that he spent 90% of

his time in the field, Plaintiff's testimony is insufficient to create a genuine issue of material fact

when the record as a whole indicates that Plaintiff's primary role in the Project Manager position

was non-manual work related to management. *See id.*; *Smith v. Johnson and Johnson*, 593 F.3d

280, 285 (3d Cir. 2000). Accordingly, this factor of the administrative exemption is satisfied.

### b. Whether Plaintiff's primary duty included discretion and independent judgment

"To qualify for the administrative exemption, an employee's primary duty must include

the exercise of discretion and independent judgment with respect to matters of significance." 29

C.F.R. § 541.202(a). This "involves the comparison and the evaluation of possible courses of

conduct, and acting or making a decision after the various possibilities have been considered."

*Id.*

> [E]mployees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.

*Id.* at § 541.202(c). Some factors the court considers in determining whether an employee

exercises discretion and independent judgment with respect to matters of significance include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree...; [and] whether the employee is involved in planning...business objectives....

*Defining and Delimiting the Exemptions for Employees*, 69 Fed. Reg. 22,122-01, 22,143 (Apr.

23, 2004). "Federal courts generally find that employees who meet at least two or three of these

factors are exercising discretion and independent judgment, although a case-by-case analysis is required." *Id.*

Plaintiff argues that he did not exercise discretion and independent judgment because Plaintiff only followed predetermined company policies, Prince's staffing and workload were predetermined by Comcast, who provided daily work orders and assigned work to specific technicians, and Plaintiff did not have autonomy or authority to hire or terminate Prince employees. (D.I. 72 at 8–10) Prince argues that this factor is met because Plaintiff: (1) frequently implemented and enforced company policies; (2) issued wage and hour training to technicians; (3) was responsible for using discretion and judgment to maintain a positive relationship with Comcast; (4) made staffing and workload decisions; (5) ensured work was completed in a timely manner; (6) approved time-off requests; (7) and prepared performance reviews. (D.I. 65 at 15–16)

The record reflects that Plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.202(a). Specifically, Plaintiff had authority to implement policies with respect to vehicle and technician safety and accountability. (D.I. 66 at A5, A28; D.I. 67 at A553–A600; D.I. 68 at A601–A704, A801–02) Plaintiff consulted with management during weekly meetings about "trouble technicians" and financials. (D.I. 68 at A802–03) Plaintiff also reported concerns about employee behavior to his superiors. (D.I. 66 at A26) It is not necessary that Plaintiff have unlimited and unfettered authority. *See* 29 C.F.R. § 541.202(c). His recommendations with respect to disciplinary action are sufficient, even though Plaintiff's recommendations were subject to review and could be reversed by his superiors. *See id.* Accordingly, each element of the administrative exemption is satisfied.

There is no genuine issue of material fact in dispute as to whether Plaintiff was exempt from the requirements of the FLSA. Therefore, I recommend that Prince's motion for summary judgment should be granted with respect to Plaintiff's FLSA claims, pursuant to the administrative exemption.

### B.    Title VII Claim

To establish a *prima facie* claim for discrimination under Title VII, a plaintiff must establish that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action despite being qualified; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003), *cert. denied*, 541 U.S. 1064 (2004); *Miller v. Del. Dep't of Prob. & Parole*, 158 F. Supp. 2d 406, 410–11 (D. Del. 2001). The question of whether a plaintiff has established this *prima facie* case is a question of law to be determined by the court. *Sarullo*, 352 F.3d at 797 n.7.

Once Plaintiff establishes a *prima facie* case of discrimination, Prince has the burden to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's termination. *Hoist v. New Jersey*, 642 App'x 169, 171 (3d Cir. 2016) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then shifts back to Plaintiff "to prove by a preponderance of the evidence that the legitimate reason for [his] termination offered by [Prince] was a pretext." *Id.* (citing *Jones v. Sch. Dist. Of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)).

### 1.   Whether Plaintiff established a *prima facie* case of race discrimination

Prince argues that Plaintiff is unable to establish a *prima facie* case of race discrimination. (D.I. 65 at 17–19) Specifically, Plaintiff is unable to show he was qualified for

the Project Manager position, or that the circumstances give rise to an inference of discrimination. (*Id.* at 18–19)

To be considered qualified for the Project Manager position, Plaintiff "need only show [he] possessed the necessary 'training and experience for the job from which he was discharged.'" *Cheatom v. Burger King Corp.*, No. Civ.A. 05-251, 2006 WL 435732, at *4 (E.D. Pa. Feb. 22, 2006) (quoting *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 342 (3d Cir. 1990)). Issues of Plaintiff's insubordination, poor performance and misconduct are more logically raised to rebut Plaintiff's *prima facie* case. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). That Plaintiff performed his job as Project Manager for over three years is sufficient to satisfy this element of Plaintiff's *prima facie* case. *See, e.g., Stewart v. Amazing Glazed, LLC*, Civil Action No. 05-1724, 2007 WL 3334973, at *7 (W.D. Pa. Nov. 8, 2007) (plaintiff was qualified where he performed his job as shift supervisor for more than a year and a half); *Cheatom*, 2006 WL 435732, at *3.

A plaintiff may establish an inference of discrimination in many ways. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999). However, Plaintiff must produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Id.* (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). "The burden of establishing a *prima facie* case 'is not intended to be onerous.'" *Romdhani v. Exxon Mobil Corp.,* Civil Action No. 07-715-JJF, 2011 WL 722849, at *12 (D. Del. Feb. 23, 2011) (quoting *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995)). Plaintiff need not make a "robust showing" with respect to this element. *Miller v. Del. Tech. & Cmty. Coll.*, Civil Action No. 12-216-SLR-CJB, 2015 WL 4039840, at *21 (D. Del. July 1, 2015), *report and recommendation adopted*, 2015 WL 4477694 (D. Del. July 22, 2015).

Plaintiff submits that in September of 2013, his supervisor, Mr. Herson, stated, "black people have the same problem, same issues." (D.I. 73 at 58, 100) Additionally, after Plaintiff disagreed with Mr. Herson's decision to discipline an African American technician, but not a Caucasian technician who had similar DriveCam violations, Plaintiff contends that Mr. Herson stated, "[y]ou black people think this company owes you something. This company owes you nothing." (*Id.* at 62, 101) Plaintiff was terminated the next month. Viewing the evidence in the light most favorable to Plaintiff, as it must at this stage, the court finds that Plaintiff has established an inference of discrimination, as well as each element of his *prima facie* case. The court will next consider Plaintiff's alleged performance issues in determining whether Prince has adequately rebutted Plaintiff's *prima facie* case. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989).

### 2.  Prince's legitimate, nondiscriminatory reasoning

Prince has provided legitimate, nondiscriminatory reasons for terminating Plaintiff. Prince asserts that it terminated Plaintiff because he failed to timely discipline several technicians, had "ongoing performance issues," and failed to communicate with management. (D.I. 65 at 19) Plaintiff's performance concerns were well-documented by Prince. (*Id.*) Accordingly, Prince has "clearly set forth...reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)) (internal quotations omitted) (emphasis in original).

### 3.  Whether Prince's proffered reason is pretextual

Plaintiff must produce sufficient evidence to allow a reasonable fact finder to conclude

that the proffered reasons for his termination are a pretext. *Id.* To establish pretext, Plaintiff

must present evidence that either (1) "casts sufficient doubt upon each of the legitimate reasons

proffered by [Prince] so that a factfinder could reasonably conclude that each reason was a

fabrication," or (2) supports an inference that "discrimination was more likely than not a

motivating or determinative cause of the adverse employment action." *Hoist v. New Jersey*, 642

F. App'x 169, 171 (3d Cir. 2016) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)).

Prince submits evidence that Plaintiff:

(1) was issued a Performance Improvement Plan in 2012 because he was not
    consistently performing his duties as Project Manager;
(2) received written warnings in July and August 2013 for failing to enforce
    Prince's Vehicle Policy with respect to at least six (6) Technicians; and
(3) failed to timely discipline at least three (3) Technicians for violations of the
    Policy in September and October 2013.

(D.I. 65 at 20)

Plaintiff responds that his alleged performance deficiencies were attributable to the fact

that he was misclassified and had to work primarily in the field instead of in a management role.

(D.I. 72 at 19) However, as discussed at § IV(A), *supra*, Plaintiff's primary duty was

management.  Additionally, Plaintiff submits that the performance issues were not Prince's

primary concern.  (*Id.*) Prince's president, John Kuhn, stated in response to an email about

Plaintiff's potential demotion that "there are other issues and concerns right now in New Castle."

(*Id.*) However, Plaintiff fails to quote the entirety of Mr. Kuhn's email, which acknowledges that

he "kn[ew] [Plaintiff] has had issues in his management style," and asked if it could be discussed

on the following Monday.  (D.I. 73 at 105) Plaintiff also attempts to rebut Prince's legitimate

nondiscriminatory reason by pointing to Mr. Herson's prejudicial remarks to Plaintiff about

African Americans. (D.I. 72 at 19) Plaintiff contends that he was only terminated after he made

the ethics report on Mr. Herson. (*Id.*) However, the record reflects that termination papers were

prepared on October 1, 2013, before Plaintiff filed his report on October 7, 2013. (D.I. 68 at

A737–38) Finally, Plaintiff does not dispute the existence of multiple documented written

warnings beginning in the summer of 2012. (*Id.* at A705–13, A746)

In viewing the facts in the light most favorable to Plaintiff, "[P]laintiff has failed to show

sufficient evidence from which a reasonable juror could conclude that defendants' legitimate,

nondiscriminatory reason was pretext." *See Flores v. Danberg*, 84 F. Supp. 3d 340, 350 (D. Del.

2015) Therefore, I recommend that Prince's motion for summary judgment on Plaintiff's claims

of racial discrimination should be granted.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court grant Prince's motion for summary

judgment. (D.I. 64)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10)

pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: March 31, 2017

Sherry R. Fallon
United States Magistrate Judge